IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT H. MIRACLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIV-04-769-W |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and disabled adult child's benefits under Title II of the Social Security Act, 42 U.S.C. §416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and both parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his applications on May 4, 2001 (protective filing date), alleging that he became disabled on April 1, 1999, due to bipolar disorder. (TR 63-65, 71, 84, 218-219). Plaintiff's application for disabled adult child's benefits is based on the earnings record of

his father, Roger Dale Miracle, who died on January 30, 2000. (TR 18, 66-67). Plaintiff's applications were administratively denied. (TR 27-32, 34-37, 221-224). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge ("ALJ") O'Bryan on August 19, 2002, at which Plaintiff appeared with a representative and testified and a vocational expert ("VE") also testified. Subsequently, ALJ O'Bryan entered a decision (TR 18-25) in which the ALJ found that Plaintiff was insured for the purpose of his Title II disability insurance benefits claim only through June 30, 2002, and that he must therefore establish his disability on or before the date his insured status expired. With respect to Plaintiff's claim for benefits as a disabled adult child, the ALJ found that (1) Plaintiff is the child of deceased wage earner, Roger Dale Miracle, (2) he is a dependent of the deceased wage earner, (3) he is unmarried, and (4) he attained the age of 22 in September 2001.

Based on the ALJ's review of the evidence and the testimony of Plaintiff and the VE, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act because he retains the capacity to perform the physical and mental requirements of his past work as an unskilled stocker. The ALJ denied Plaintiff's applications for benefits, and the Appeals Council declined Plaintiff's request to review the administrative decision. (TR 5-7). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Plaintiff's Claims

Plaintiff contends that the ALJ erred in finding that Plaintiff's statements were not credible and misinterpreted the record in this regard. Further, Plaintiff contends that there

is not substantial evidence in the record to support the ALJ's credibility determination. Plaintiff contends that there is not substantial evidence in the record to support the ALJ's finding that Plaintiff has the residual functional capacity ("RFC") to perform the mental demands of work at any exertional level. Plaintiff also contends that the ALJ erred in failing to submit a hypothetical inquiry to the VE which included Plaintiff's mental impairments. Finally, Plaintiff contends that there is not substantial evidence to support the ALJ's finding that he has the physical capacity to perform his past relevant work. Defendant responds that no error occurred with respect to the ALJ's evaluation of the evidence and that the Commissioner's decision should be affirmed.

III. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The reviewing court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam)*. The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th

Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §404.1520(b)-(f); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that he has one or more severe impairments.  20 C.F.R. §404.1512 (2004); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

To be entitled to disability insurance benefits, the claimant must also demonstrate that he or she was disabled on or before the date that the claimant's insured status expired. Plaintiff's insured status for Title II disability insurance benefits expired on June 30, 2002. (TR 18-19).  Consequently, to be entitled to receive disability insurance benefits, Plaintiff

must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on June 30, 2002. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993). "[T]he issue is the existence of a disability at a particular time and not the identification of a cause." Flint v. Sullivan, 951 F.2d 264, 268 (10th Cir. 1991).  In other words, if there is medical evidence of a degenerative or ongoing impairment, "[t]he relevant inquiry ... is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition." Stonebraker v. Shalala, 827 F.Supp. 1531, 1536 (D.Kan. 1993).

Additionally, with respect to Plaintiff's claim for disabled adult child benefits, Plaintiff must demonstrate that he (1) was the child of the wage earner, his deceased father, (2) he was a dependent of the wage earner, his deceased father, (3) he is unmarried, and (4) he has a disability which began before he attained 22 years of age in September 2001. 42 U.S.C. §402(d); 20 C.F.R. §404.350.

IV. Step Four

All of the Plaintiff's allegations of error and insufficient evidence relate to the ALJ's fourth step decision that Plaintiff is capable of performing his past relevant work as a stocker despite his severe mental and physical impairments. Plaintiff alleged that he became disabled due to bipolar disorder on April 1, 1999.  The ALJ found that Plaintiff has severe impairments, which were described in the ALJ's decision as a "mental health impairment and

some hearing difficulty." (TR 21).  The ALJ reviewed the report of the consultative psychiatric examiner, Dr. Chakraburtty, who evaluated Plaintiff on July 21, 2001 (TR 21, 131-133), and the letter report of Dr. McNeil dated January 7, 2002, which summarized his psychiatric treatment of Plaintiff between September 1997 and November 2000 and findings with regard to Plaintiff's ability to work (TR 21, 135-136).  The ALJ also reviewed in his decision the treatment records of Plaintiff's treating mental health clinic, Chisholm Trail Counseling Services, Inc., which reflect on-going treatment of Plaintiff between August 2001 and February 2002. (TR 21, 178-192).  The ALJ noted that Plaintiff had been treated for recurrent tonsillitus at the time he alleged the onset of disability and that in January 2001 his treating family physician reported he had perforated his left ear drum and expressed subjective hearing loss in that ear. (TR 21, 113).

The ALJ noted in his decision that Plaintiff was not receiving mental health treatment at the time he filed his applications.  Plaintiff contends this statement is contrary to the record.  However, Plaintiff refers only to evidence in the record that is not contrary to the ALJ's statement.  Dr. McNeil, a psychiatrist, submitted a letter to the agency dated January 7, 2002, in which he reported that he had treated Plaintiff from September 1997 until November 2000.  Dr. McNeil stated that he began treating Plaintiff following "an initial hospitalization where he was diagnosed with Psychosis, NOS," but that Dr. McNeil subsequently diagnosed Plaintiff with schizoaffective disorder not related to medical or substance reasons. (TR 135).  Plaintiff filed his applications in May 2001.  One month earlier, in April 2001, Plaintiff's treating family physician, Dr. Pope, noted that he advised

6

Plaintiff to seek mental health treatment to obtain medications to treat a psychotic disorder. (TR 112). In July 2001, when Plaintiff was evaluated by a psychiatrist, Dr. Chakraburtty, for the agency, Plaintiff reportedly stated that he was not receiving mental health treatment. (TR 131). Accordingly, the ALJ's statement that Plaintiff was not being treated for a mental impairment at the time he filed his applications for benefits is accurate based on the record. No error occurred in this regard.

Plaintiff contends that the ALJ erred in determining the credibility of Plaintiff's statements. Plaintiff first contends that the ALJ merely stated conclusions with respect to the credibility determination. Plaintiff also contends that there is not substantial evidence to support the ALJ's finding that Plaintiff's allegation of a disabling mental impairment were not credible.

At the fourth step of the evaluation process required of administrative factfinders, the ALJ recognized that he was required to determine whether the Plaintiff retains the RFC to perform the requirements of his past relevant work or other work that exists in significant numbers in the economy. At step four, the claimant bears the burden of proving his inability to perform the duties of his past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the

ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

When a claimant is found to have a severe mental impairment, the regulations require that the ALJ follow a specific sequential evaluation procedure to determine the RFC for such a claimant. The ALJ found that Plaintiff has a severe mental impairment, which has been diagnosed as either a psychosis or a schizoaffective disorder. (TR 21).  Because of this finding, the ALJ was required to

> follow the procedure for evaluating mental impairments set forth in 20 C.F.R. §404.1520a and the Listing of Impairments and document the procedure accordingly. This procedure first requires the [Commissioner] to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. §404.1520a(b)(2).  The [Commissioner] must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. §404.1520a(b)(3).

Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir. 1995)(internal citation omitted).  The ALJ is required to "incorporate the pertinent findings

and conclusions" in his or her decision, 20 C.F.R. §404.1520a(e)(2), and relate the medical evidence to those conclusions. Cruse, 49 F.3d at 618.

Plaintiff contends that the ALJ erred by failing to give sufficient reasons for his finding that Plaintiff's testimony concerning his impairments and their impact on his ability to work was not credible. The ALJ's decision reflects his finding that

> [t]he claimant's statements concerning alleged impairments and their impact on ability to work have not been entirely credible in light of discrepancies between those assertions and information contained in the documentary reports of treating and examining practitioners, the medical history, and the findings made on examination. The claimant's reported activities have included doing school work, preparing meals, helping with cleaning chores and yard work (like mowing grass), occasionally shopping for grocery items, reading, watching television, and driving an automobile. The claimant's activities have not been inconsistent with the performance of substantial gainful activity. The claimant has not experienced significant physical pain. Although he has complained of hearing difficulties, he has been capable of hearing and understanding ordinary conversation. The claimant has not required pain medication, and significant side effects from medications have not been demonstrated. The record as a whole does not support a finding of disabling functional restrictions at any time relevant to this decision.

(TR 23). The ALJ's decision reflects his consideration of the relevant medical evidence as well as Plaintiff's testimony in reaching this credibility determination. Just previous to this explanation of the credibility determination, the ALJ set forth the medical evidence which he relied on in determining the functional limitations resulting from Plaintiff's mental impairment. The same medical evidence supports the ALJ's credibility determination.

In reaching his decisions with respect to the Plaintiff's functional limitations caused by his mental impairment and with respect to the credibility of Plaintiff's allegation of a disabling mental impairment, the ALJ referred to Dr. Chakraburtty's findings that Plaintiff's global assessment of functioning score at the time of the psychiatrist's evaluation was 65-70[1] and that Plaintiff's claim of inability to work because of transportation problems was not sufficient to show disability because of a mental impairment. (TR 21, 131-133). The ALJ also referred to Dr. McNeil's letter in which this treating psychiatrist opined that Plaintiff's mental impairment would limit only his ability to work in a job requiring significant amounts of interpersonal contact. (TR 21, 135). The ALJ also referred to the records of Plaintiff's treating mental health clinic in which his counselor noted in November 2001 that Plaintiff reported the medications prescribed for his mental impairment were working, that he was doing better in his college classes, and that he was alert, well-oriented, and verbal, that his mood was stable, and that his appearance and manner were "more organized than on previous visits." (TR 21, 182). The ALJ summarized his findings with respect to the functional limitations caused by Plaintiff's mental impairment, applying the regulations which set forth the requisite analysis of the presence and extent of functional limitations resulting from a mental impairment:

---

[1] A global assessment of functioning ("GAF") score is used as a diagnostic tool for mental health professionals. A score at this level indicates only mild symptoms and the ability to function fairly well. American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994).

> "[t]he claimant has demonstrated some ideas of reference and some delusions of persecution. However, his concentration and short term memory has been generally good. The claimant has apparently been enrolled in school during part of the alleged period of disability. His activities of daily living have been only mildly restricted. The claimant has shown an interest in being more socially active, as he has had moderate difficulty in maintaining social functioning. Concentration, persistence, and pace have been moderately restricted at most. The evidence fails to demonstrate episodes of decompensation at any time relevant to this decision.

(TR 21-22). See 20 C.F.R. §404.1520a. These findings with respect to the medical evidence as well as the Plaintiff's own statements regarding his daily activities provide amply evidence to support the ALJ's credibility determination, and this credibility determination will therefore not be disturbed.

The ALJ did not find that Plaintiff's allegations of functional limitations resulting from his physical and mental impairments were entirely incredible. Rather, the ALJ found that as a result of Plaintiff's hearing loss, Plaintiff was limited to the performance of jobs not requiring the Plaintiff to hear with his left ear. As a result of Plaintiff's mental impairment, the ALJ found that Plaintiff's ability to work was limited to jobs that did not require the ability to understand, remember, and carry out detailed or complex job instructions and that did not require working closely with the general public. (TR 23). The ALJ elicited VE testimony concerning the physical and mental requirements of Plaintiff's previous work. The VE testified that Plaintiff's previous jobs were mostly unskilled stocker positions that did not require him to understand, remember, or carry out detailed or complex instructions and did not require significant interaction with the general public. (TR 241-243). The VE also

described the physical requirements of that previous work. (TR 241-243). The ALJ relied on the VE's testimony in finding that Plaintiff was capable of performing his previous jobs as a stocker. (TR 23-25).

Plaintiff alleges the ALJ failed to consider the issue of "competitive work environments" in determining Plaintiff's RFC for work. However, Plaintiff refers to Social Security Ruling ("SSR") 85-15, which applies only in cases in which a claimant has been found to be incapable of performing his or her past relevant work. SSR 85-15, 1985 WL 56857 ("Titles II and XVI: Capability to Do Other Work - - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments"). The ALJ found that Plaintiff is capable of performing his past relevant work, and therefore SSR 85-15 is not applicable to the ALJ's decision. Nevertheless, the ALJ considered the appropriate mental demands in determining Plaintiff's RFC for work. SSR 85-15 states that: "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." The ALJ expressly found that Plaintiff's ability to understand, carry out, and remember instructions was limited to simple, not detailed or complex, instructions, and that his ability to work was limited to jobs not requiring significant contact with the public.

Plaintiff's treating psychiatrist, Dr. McNeil, opined that Plaintiff's ability to work would be limited to jobs not requiring a significant amount of interpersonal contact. (TR

136). The RFC assessments by the agency's consultative medical reviewers also supported the ALJ's findings with respect to Plaintiff's mental RFC for work. (TR 137-139, 141-143). No error occurred in this regard, and the ALJ's RFC finding with respect to Plaintiff's mental ability to perform work-related activities is supported by substantial evidence in the record. Plaintiff's assertion that his "own work history evidences that he cannot maintain work for long periods of time" fails to take into account Plaintiff's activities and treatment records. This record reflects his positive response to anti-psychotic and anti-depressant medications and counseling, his ability to obtain a GED and attend college regularly enough to obtain multiple credits, and a variety of daily activities. (TR 131-133,179, 180, 182). Plaintiff did not report any problems in his relationship with family members to the consultative examiner, and he expressed a desire to his treating counselor for more social connections. (TR 132, 182). Additionally, the consultative examiner found that Plaintiff's ability to concentrate and short-term memory were not impaired. (TR 132).

  Plaintiff alleges that the ALJ did not properly question the VE because the ALJ "did not mention any mental impairment in his question" to the VE. Plaintiff's Brief, at 9. Plaintiff has misread the record and the governing regulations. At step four, the ALJ was required to determine whether Plaintiff is capable of performing the physical and mental demands of his past relevant work. The transcript of the hearing reflects that the ALJ specifically and properly questioned the VE concerning the physical and mental demands of Plaintiff's past relevant work. The ALJ's inquiry to the VE included the RFC limitations that the ALJ found were supported by the medical record, including limitations directly

resulting from Plaintiff's mental impairment. The VE responded that an individual with this RFC limitation could perform Plaintiff's past relevant work as a stocker. This testimony provides support for the ALJ's determination that Plaintiff is not disabled because he retains the ability to perform his previous work despite his physical and mental impairments. No error occurred in this respect.

Because the ALJ concluded Plaintiff has the capacity to perform his past relevant work, the ALJ was not required to inquire as to the availability of other jobs for an individual with Plaintiff's RFC for work. Nor was the ALJ required to address limitations which he did not find were supported by the medical record. Although the ALJ inquired of the VE as to whether an individual who would "have more time off than the average employee would have" would be employable (TR 244), the ALJ did not include in his RFC finding any limitation regarding Plaintiff's need for time away from the job. Plaintiff is apparently asserting that because the ALJ asked this question, the ALJ was required to include this limitation in his RFC finding. However, Plaintiff has not referred to any medical evidence to support such a limitation. Plaintiff refers only to the subjective statements contained in his written disability report submitted to the agency. (TR 84). Neither the medical record or Plaintiff's own testimony provide support for such a limitation. Thus, there is substantial evidence in the record to support the ALJ's RFC determination, and there is substantial evidence in the record to support the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act because

he is capable of performing his past relevant work. Consequently, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for disability insurance and disabled adult child's benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___June 1st___, 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___12th___ day of ___May___, 2005.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE